IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**ALLISON D. KNIGHT**,

        Plaintiff,

vs.                                           Hon.
                                              Case No. 21-

**LIFE INSURANCE COMPANY
OF NORTH AMERICA**,
a Pennsylvania corporation,

        Defendant.
_____/

## **COMPLAINT**

Plaintiff, ALLISON KNIGHT, through her attorneys, ILANA S. WILENKIN and FELDHEIM & WILENKIN, P.C., complains against the above-named Defendant as follows:

### I.    **Jurisdiction and Venue**

1)    This Court's jurisdiction exists under the Employee Retirement Income Security Act of 1974 ("ERISA"), specifically, 29 U.S.C. §§ 1132(e)(1) and 1132(f), which provisions grant this Court the jurisdiction to hear civil actions to recover benefits due under the terms of an employee welfare benefit plan.

2)      The Henry Ford Health System Health and Welfare Benefit Plan (the "Plan") consists of, *inter alia*, a long-term disability insurance plan and life insurance policy with a waiver of premium due to total disability, which is sponsored and administered by Henry Ford Health System ("HFHS") and underwritten by Defendant Life Insurance Company of North America ("LINA").

3)      29 U.S.C. § 1133 provides a mechanism for the administrative or internal appeal of benefit denials. Plaintiff ("Ms. Knight") has either exhausted all of her appeals or has been denied access to a meaningful and/or full and fair pre-suit appellate review. This matter is ripe for juridical review.

4)      Pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. § 1391, venue is proper in the Eastern District of Michigan.

## II.    Nature of Action

5)      This is a claim seeking long-term disability income benefits and a waiver of life insurance premiums pursuant to the Plan, which is sponsored and administered by HFHS and underwritten by LINA, and which Plan was intended to provide long-term disability income benefits and ongoing life insurance coverage with a waiver of premium due to total

disability to HFHS employees, including Ms. Knight. This action is brought pursuant to § 502(a)(1)(B) of ERISA - 29 U.S.C. § 1132(a)(1)(B).

### III. The Parties

6) Ms. Knight is 59-years-of-age. She was, and continues to remain, a resident of Detroit, Michigan.

7) LINA is a Pennsylvania corporation conducting insurance-related business in Michigan. Upon information and belief, LINA's resident agent for service of process is CT Corporation System, 40600 Ann Arbor Rd. East, Suite 201, Plymouth, MI 48170.

8) During all relevant times, the Plan constituted an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and, incidental to her employment with HFHS, Ms. Knight received coverage under the Plan as a "participant," as defined by 29 U.S.C. § 1002(7). This claim relates to benefits due under the above-described Plan.

### IV. Factual Statement & Medical Support

9) Ms. Knight is 59 years-of-age and began working for HFHS as a physical therapist during 1993. Ms. Knight stopped working stopped working for HFHS on or about 7/6/16 due to multiple sclerosis and has not engaged in any substantial, gainful activity since that date.

10) As an insured employee under the Plan, Ms. Knight applied to LINA to begin receiving long-term disability benefits as well as a waiver of life premium due to total disability. LINA paid Ms. Knight long-term disability benefits beginning approximately 1/18/17 through 1/18/19, at which time it denied her long-term disability and waiver of life premium claims after concluding that Ms. Knight was not disabled from performing any occupation.

11) Without the assistance of counsel, Ms. Knight appealed LINA's denial on 9/21/19.

### A. Relevant Medical Evidence

12) A 7/23/16 brain MRI demonstrated:

1. Interval development of a demyelinating lesion at C2-C3, which is expansile and demonstrates enhancement consistent with active demyelination with the enhancing portion measuring 8.6 x 17.2 mm. There is also a new demyelinating lesion just inferior to this at C3-C4 without associated enhancement.

2. Stable appearance of the demyelinating lesions scattered within the brain without associated enhancement.

3. Heterogeneous enlargement of the left thyroid gland and isthmus which could relate to thyroid goiter and should be followed up clinically.

(LINA/Knight Claim File).

    13)    A 7/11/18 brain MRI demonstrated:

There is no restricted diffusion.

Numerous focal demyelinating plaques identified scattered within the white matter of the cerebral hemispheres bilaterally, within the body of the corpus callosum as well as the right-sided pons. These all have a similar appearance to the prior study.

No enhancing plaques or enhancing masses are identified above or below the tentorium.

No intracranial hemorrhage, midline shift, mass effect or hydrocephalus is identified.

Orbits and paranasal sinuses are satisfactory.

The flow-voids of the arteries of the circle of Willis are identified consistent with patency.

(LINA/Knight Claim File).

    14)    A 7/11/18 cervical MEI demonstrated:

1. There is a mildly more prominent demyelinating plaque identified at the C5 level eccentric to the right which is non-enhancing.

2. The demyelinating plaque at the C2-C3 level is mildly smaller on the axial images in the interim, the longitudinal length is similar. This is not enhancing.

3. Numerous non-enhancing demyelinating plaques are seen within the white matter of the cerebral

5

> hemispheres bilaterally, right sided pons as well as the body the corpus callosum which are stable. No new enhancing or non-enhancing demyelinating plaques are seen.

(LINA/Knight Claim File).

15) An 11/2/19 brain MRI demonstrated:

> There is restricted diffusion to indicate acute infarct. There are multiple foci of periventricular and subcortical FLAIR hyperintensity bilaterally. There are foci in the body of the corpus callosum. There are foci in the right mid and posterior pons. . . .
>
> IMPRESSION: White matter signal abnormalities consistent with demyelination as described.

(LINA/Knight Claim File).

16) On 12/22/19, Ms. Knight treated with her then new neurologist, Tessy Jenkins, M.D., who noted the following findings and opinions:

> **Subjective**
>
> Clinically she complains of fatigue and recurrent bouts of hot flashes, dizziness and sweating, as well as tingling in the extremities. The patient has been evaluated with a brain MRI and EMG. Group discussion regarding multiple sclerosis was followed by individual sessions to discuss follow up symptoms, labs, and treatment plan.
>
> **Objective**

There are no cranial or carotid bruits. Neck is supple with full range of motion. No pedal or ankle edema or skin changes are noted. Cranial nerves II through XII are normal. No drift, tremors or involuntary movements noted. Strength was 4/5 in lower extremities bilaterally. There are sensory deficits to pinprick in the L5 and S1 cutaneous dermatomes of the left leg.

**Plan**

Multiple sclerosis [is] a chronic, unpredictable disease of the central nervous system (the brain, optic nerves, and spinal cord) thought to be an autoimmune disorder. More than 2.1 million worldwide and an estimated 400,000 people in the US have MS, with 200 people diagnosed each week. More than twice as many women as men have MS.
Typical symptoms are blurred vision, loss of balance, poor coordination, slurred speech, tremors, numbness, extreme fatigue, problems with memory and concentration, paralysis, blindness and more. These problems may be permanent or may come and go.

The first group of medications (disease modifying therapies) are drugs that impact the underlying disease. These drugs are also called immunomodulatory therapies and generally work by targeting some aspect of the inflammatory process of MS, with an aim of preventing inflammation which causes relapses.

Second, there are medications that help to decrease the severity and duration of MS relapses by actively suppressing inflammation. Steroids and ACTH are used over the short term to improve relapse symptoms and speed healing.

Finally, there are medications that help ease many MS related symptoms. There medications to help fatigue, spasticity, pain, bladder problems, sexual dysfunction, weakness, and cognitive problems.

> On the basis of [Ms. Knight's] most recent assessment, this patient is physically unable to perform any job. This patient's condition is indefinite. This patient's condition is worsening.

(LINA/Knight Claim File).

### B.     Claim History

17)     As part of its any-occupation review, LINA sent Ms. Knight to Shlomo Mandel, M.D. (Board Certified in internal and occupational medicine) for an exam. After reviewing Ms. Knight's records and examining her, Dr. Mandel opined:

> In my opinion, she can return to work, but as suggested by Dr. Cerghet, she should avoid patient interaction where she has to guard or support patients. Likewise, activities which require balance or awkward position should be avoided. Prognosis is otherwise fair, and she should continue seeing her neurologist on a regular basis. Weight loss and exercise are encouraged. I have completed the Physical Ability Assessment form which is attached.

(LINA/Knight Claim File).

18)     Subsequent to LINA's 3/27/19 claim denial and Ms. Knight's 9/21/19 administrative appeal, LINA directed Ms. Knight's records to Michelle Boudreau, D.O. (neurology) and Wesley Chan, M.D. (occupational medicine) for a records review.

19)     In a 2/18/20 report, Dr. Boudreau opined as follows:

8

> The following restrictions and limitations are substantiated by the medical records from 3/28/2019 to the present due to fatigue causing lack of pace and persistence and worsening her baseline MS symptoms of imbalance:
>
> o   There are no restrictions/limitations regarding sitting.
> o   She can sustain up to 1 hour of continuous standing or walking, up to 4 hours cumulatively for the two activities combined in an 8-hour day.
> o   She can frequently lift, carry, push, or pull up to 10 pounds.
> o   She can occasionally lift, carry, push, or pull 11-20 pounds.
> o   She can never lift, carry, push, or pull anything greater than 20 pounds.
> o   She can occasionally bend, climb, balance, stoop, kneel, crouch, or crawl.
> o   She can frequently reach and extend with either upper extremity in the seated position.
> o   She can occasionally reach and extend with either upper extremity in the standing position.
> o   She can constantly handle, grasp, finger, and feel using both hands.
> o   She can occasionally use foot controls with either foot.
> o   The following safety restrictions are also appropriate: She should never be exposed to unprotected heights, uneven or slippery surfaces, or moving mechanical parts. She should also avoid patient interaction where she has to guard or support patients.  Should also avoid patient interaction where she has to guard or support patients.

(LINA/Knight Claim File).

20)   In a 2/28/20 report, Dr. Chan opined as follows:

> The claimant is not functionally limited with respect to the conditions of chronic low back pain, osteoarthritis of the hip,

9

> and neck pain. It is my opinion from an occupational medicine perspective that around the time period in question, the medical evidence in the records reviewed did not show any significant examination findings that would support any functional impairment requiring restrictions or limitations regarding these conditions.

(LINA/Knight Claim File).

21) In a letter dated 6/19/20, LINA denied Ms. Knight's appeal, upholding its previous denial.

22) Ms. Knight had been approved for Social Security Disability during her own-occupation claim and reimbursed LINA the overpayment that was created by her primary benefit. It is unclear how much Ms. Knight reimbursed LINA for the dependent(s) benefit.

23) LINA's actions have now foreclosed all avenues of administrative appeal and this matter is ripe for judicial review.

24) Because valid, objective, and well-supported proofs establish that Ms. Knight has continued to meet and satisfy the Plan's definition of disability for LTD and waiver of premium purposes as of 1/19/19 until the date that Ms. Knight turns 65, she is entitled to ongoing indemnity monthly benefits in the amount of $3,091.00, which is the net LINA benefit after crediting her Social Security Disability benefit.

**WHEREFORE**, based upon the preceding reasons, Plaintiff prays for the following relief:

- A) That this Court enter judgment in Ms. Knight's favor against LINA and order the immediate payment of long-term disability benefits as well as a waiver of life premium;

- B) That this Court order LINA to pay Ms. Knight prejudgment interest pursuant to *Horn v. McQueen*, 353 F. Supp. 2d 785 (2004) and post-judgment interest in accordance with M.C.L. § 600.6013 and 600.6455;

- C) That this Court award attorneys' fees pursuant to 29 U.S.C. § 1132(g); and

- D) That Ms. Knight recover all relief to which he may be entitled, along with the costs of litigation.

Respectfully submitted:

**FELDHEIM & WILENKIN, P.C.**

By: s/Ilana S. Wilenkin
Ilana S. Wilenkin (P61710)
Plaintiff's attorney
30300 Northwestern Highway, Suite 108
Farmington Hills, MI 48334-3255
(248) 932-3505; fax (248) 932-1734
ilana@lawsmf.com

Dated: June 24, 2021